UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MERLIN MALONE**,                        Case No. 1:10 CV 837

       Plaintiff,                        Judge John R. Adams

      v.                              REPORT AND RECOMMENDATION

**COMMISSIONER OF SOCIAL SECURITY,**

       Defendant.                    Magistrate Judge James R. Knepp II

## Introduction

Plaintiff Merlin Malone appeals the administrative denial of supplemental security income benefits (SSI) under 42 U.S.C. § 1383. The district court has jurisdiction under 42 U.S.C. § 1383(c)(3).

This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

## Background

On October 26, 2006, Plaintiff filed an application for SSI alleging disability as of October 2, 2006. (Doc. 11, "Tr.", at 71).[1] Plaintiff claimed he was disabled because he had pain in his back, legs, and arms. (Tr. 94). The Social Security Administration denied his claims initially and on reconsideration. (Tr. 69-71, 74-76). He then sought a hearing before an Administrative Law Judge (ALJ).

---

[1] At the hearing, Plaintiff's counsel amended the onset date to October 6, 2006, the date of Plaintiff's application (Tr. 24), but, as noted above, the actual application date was October 26, 2006 (Tr. 14, 50, 51, 71).

After reviewing the evidence, the ALJ found Plaintiff was not disabled because he could perform a significant number of light jobs, despite his impairments. (Tr. 14-20). The Appeals Council denied review, making the ALJ's decision as the final decision of the Commissioner. (Tr. 1-3); 20 C.F.R. § 416.1481.

In 1985, Plaintiff was involved in a motorcycle accident. (Tr. 213). He fractured his left femur, left tibia, and both forearms. (*Id.*). He underwent an open reduction and internal fixation to repair his fractured bones, and had hardware put in both of his arms, his left femur, and left leg. (*Id.*). He recovered, and seven years later he had another motor vehicle accident. (*Id.*). This time he fractured his pelvis and wrist, and had a steel plate put in his pelvis. (*Id.*).

In February 2007, four months after Plaintiff's alleged onset date, he went to a medical clinic complaining of pain in his shoulder and leg. (Tr. 189). He said he had the pain for twenty years, and that the rehabilitation program he was in and the medication he was taking were not helping. (*Id.*). The examination revealed tenderness in his right shoulder and decreased range of motion. (*Id.*). The x-ray of his lumbar spine showed no acute bony abnormality. (Tr. 191). Nurse T. Majette noted frozen shoulder and referred Plaintiff to physical therapy. (Tr. 189).

Two weeks later, he returned to the medical clinic complaining of pain in his right arm. (Tr. 190). He had decreased grip strength and decreased range of motion in both shoulders, but his muscle strength was normal and his sensory examination was intact. (*Id.*). Plaintiff was prescribed medication. (*Id.*).

A month later, he went to the emergency room complaining he had pain in his left shoulder and leg. (Tr. 192). He said it had been hurting for three months. (Tr. 194). His physical examination showed he had limited range of motion (*Id.*), intact sensation and motor function (Tr.

2

195), normal circulation (Tr. 190), no vascular abnormalities (Tr. 195), and normal neurological function (Tr. 190). The x-ray of his right shoulder showed no sign of an acute fracture or dislocation, and unremarkable regional soft tissues. (Tr. 199). He was discharged home in stable condition. (Tr. 195).

Later that month, Plaintiff began physical therapy. (Tr. 207). At his first visit, Physical Therapist Rachel Mison reviewed his history and noted the MRI of his shoulder revealed very mild degenerative disease but no evidence of acute trauma. (*Id.*). She also noted he raised both shoulders past 90 degrees while in the supine position. (Tr. 208). She diagnosed adhesive capulitis (frozen shoulder). (Tr. 207). Plaintiff continued to attend physical therapy. (Tr. 209).

The following month, at Plaintiff's next physical therapy session, Ms. Mison noted Plaintiff's tolerance to shoulder strengthening activities was improving and that he was progressing well toward his goals. (Tr. 205). Plaintiff reported he had been able to work a few hours for the first time since he began experiencing shoulder pain. (*Id.*).

In October 2008, Plaintiff went to the hospital complaining he had been experiencing pain since he fell off his bike. (Tr. 227, 229). Dr. Audley Mackel, III, M.D., noted Plaintiff had some tenderness over his spinous scapular muscle in his left shoulder, but no anterior scapular or tenderness and an intact neurovascular status. (Tr. 227). She assessed a non-displaced left scapular fracture, put him in a shoulder immobilizer, prescribed medication, and advised him to follow-up in two weeks. (*Id.*).

Plaintiff continued to report pain, but he admitted he was not compliant with his shoulder sling. (Tr. 229). In November, he told Dr. Mackel the medications and rest were helping to decrease his symptoms. (*Id.*). Dr. Mackel examined Plaintiff and noted he had limited range of

3

motion in his shoulder and decreased strength. (*Id.*). She also noted he had pain on palpation, and soreness in his trapezius muscle. (*Id.*). But she noted he tolerated the passive range of motion slightly better than the active range of motion, and even gained nine degrees. (*Id.*). She also noted his cervical active range of motion and flexion and extension were within normal limits. (*Id.*). Dr. Mackel concluded Plaintiff's rehabilitation potential was good. (Tr. 230).

In December 2008, Plaintiff returned to physical therapy. (Tr. 247). He told physical therapist Betsy Vozary that he was only doing the exercises three times a week. (*Id.*). During the session, Plaintiff did several weight-bearing exercises. (*Id.*). Ms. Vozary noted Plaintiff tolerated the exercises well, but he showed little motivation or initiative in the gym. (*Id.*). She planned to add shoulder press and pull over machines to the next session. (*Id.*).

At the next session, two days later, Plaintiff reported he was still experiencing pain in his shoulder and that it was deep. (Tr. 246). He rated it at an eight out of ten. (*Id.*). During the session, Plaintiff performed several exercises and stretches including: twenty reverse chest presses with a weight of 90 pounds, twenty shoulder pullovers with a weight of 90 pounds, twenty shoulder presses with a weight of 90 pounds, twenty wall push-ups, ten subscapularis (wall) presses, an internal rotation tele-stretch, and twenty "huggy bear exercises" with a five pound Thera Band. (*Id.*). He also did a passive range of motion in the supine position for ten minutes. (*Id.*). Ms. Vozary noted he had full range of motion, correct scapulohumeral rhythm with flexion and abduction exercises. (*Id.*). She concluded Plaintiff's pain level was inconsistent with his performance in the gym. (*Id.*). She planned to add a lift station at the next session. (*Id.*).

Plaintiff continued to perform weight-bearing exercises in physical therapy. (Tr. 244, 245). In January, he shoulder pressed, shoulder pulled, and chest pressed 180 pounds. (Tr. 244). Ms.

4

Vozary noted that even though Plaintiff complained of pain when reaching overhead, he was able to tolerate approximately one hour of exercises without pain or compensatory movements. (Tr. 245).

In August 2005, Dr. Kathryn Drew M.D. completed a physical residual functional assessment. (Tr. 281-88). After reviewing Plaintiff's file, Dr. Drew concluded Plaintiff's ability to walk, climb, stand, carry, lift, and sit would be limited, but that he could still perform light work not involving binocular vision.[2] (Tr. 282-83). Dr. Drew noted Plaintiff's complaints of functional loss seemed slightly exaggerated when compared with the objective medical evidence. (Tr. 286). She concluded he was not fully credible. (*Id.*). Dr. Drew based her conclusions on Plaintiff's medical records, including the medical source statement of Plaintiff's treating or examining source. (Tr. 287).

At the request of the Agency, Plaintiff provided information about his ability to perform daily and social activities. (Tr. 140-47). In his function report, Plaintiff reported his impairments affected his ability to function, but that he could still walk 500 feet before he had to stop and rest. (Tr. 145). He also reported he prepared his own meals, went outside every day, and shopped in stores for whatever he liked. (Tr. 143). When he went outside, he walked, rode in a car, rode a bicycle, or used public transportation. (*Id.*). He reported he used a cane, but noted it was not prescribed by a doctor. (Tr. 145).

At the administrative hearing, Plaintiff testified he could not work because he had pain in his left leg, left hip, lower back, and shoulders. (Tr. 27). He said the pain was worse when it was

---

[2] On August 17, 2005, Dr. Drew amended her assessment to note Plaintiff had a limitation in depth perception and field of vision, and that her other statements remained the same. (Tr. 290).

raining. (Tr. 40). He had a cane with him. (Tr. 29). He said the hospital gave it to him in October 2008, but he was not sure about the date. (Tr. 30). He used the cane to take pressure off his hip. (*Id.*).

Plaintiff testified that in October 2008, he hurt his left shoulder after he fell off of a bicycle. (Tr. 31). He said his right shoulder hurts more than the left one, but he had not noticed anything that aggravated the pain. (*Id.*). He also said he did not do anything to help relieve the pain. (*Id.*).

Plaintiff also claimed he had pain in his lower back. (Tr. 32). He testified he had the pain for fifteen years, and it was just now getting worse. (*Id.*). He did not do anything to help his back pain. (Tr. 33). At one point, he said he was given medication that completely took the pain away, but he no longer took it because he could not afford it. (Tr. 36). He did not have any side effects from the medication. (Tr. 37).

Plaintiff also said he had limited use of his hands (*Id.*), and could not write well or pick up coins. (Tr. 39). But he could lift about twenty to fifty pounds. (Tr. 40). When Plaintiff took his grandchildren to the playground he picked them up and put them in the swing and pushed them. (*Id.*). He was also able to lift a bag of groceries. (*Id.*).

Plaintiff went outside, washed dishes, did the laundry, and prepared his own meals. (Tr. 33). When outside, he went to the park and walked around, fished, or played with his grandchildren. (Tr. 34). He did not have a driver's license, taking public transportation instead. (*Id.*).

### Standard of Review

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the

record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## Standard for Disability

Eligibility for SSI is predicated on the existence of a disability. 42 U.S.C. § 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 416.920 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

>     5.  Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## Discussion

Plaintiff raises two issues in challenging the Commissioner's denial of benefits: first, that the ALJ only provided a conclusory finding at step three of the sequential analysis, without any explanation; and second, that the ALJ's credibility determination of Plaintiff was not supported by substantial evidence.

*Whether the ALJ's Step Three Finding is Legally Sufficient*

The ALJ found in Step Two of his analysis that "[t]he claimant has the following severe impairments: arthritis involving left knee and lumbar spine, status post left scapula fracture, diminished vision, status post injuries to arms, right wrist, pelvis, and left leg." (Tr. 16). After a brief discussion explaining why the ALJ did not find any mental impairments, he found in Step Three of his analysis: "The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926)." (Tr. 16). The ALJ then went directly to Step Four

without further discussing his Step Three finding. (*Id.*). Plaintiff argues the Step Three finding is "legally insufficient, in that it was so conclusory as to be unreviewable." (Doc. 20, at 1).

When an ALJ determines that one or more impairments is severe, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, *5. An ALJ's cursory reference to the combined effect of a plaintiff's impairments is insufficient. *Blankenship v. Bowen*, 874 F.2d 1116, 1123-24 (6th Cir. 1989). However, "[a]n ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet the listings." *Loy v. Sec'y of Health & Human Serv.*, 901 F.2d 1306, 1310 (6th Cir.1990) (quoting *Gooch v. Sec'y of Health & Human Serv.,* 833 F.2d 589, 592 (6th Cir.1987)).

Plaintiff argues the ALJ should have indicated whether the combination of impairments fit within the parameters of 1.02 of the Medical Listings ("Major Dysfunction of a Joint(s) (due to any cause)"). (Doc. 15-1, at 6). But Plaintiff's attorney did not even argue this point at the hearing. A claimant represented by counsel is presumed to have presented his best case. *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 549 (6th Cir. 2002) (citing *Sears v. Sec'y of Health & Human Servs.*, 840 F.2d 394, 402 (7th Cir. 1988)). As such, it was entirely reasonable for the ALJ to not explicitly mention Listing 1.02. The ALJ thoroughly discussed the medical evidence and which of Plaintiff's individual impairments he found credible in determining Plaintiff's residual functional capacity (RFC). (Tr. 17-19). The ALJ also "specifically refer[red]" to a "combination of impairments" in finding that Plaintiff did not meet the listings. *Loy*, 901 F.2d at 1310. The ALJ therefore sufficiently addressed Plaintiff's combination of impairments.

*Whether the ALJ Properly Assessed Plaintiff's Credibility*

Plaintiff argues the ALJ improperly based his credibility finding on an "intangible or intuitive notion" and that the ALJ's evaluation of Malone's credibility is inadequate. (Doc. 15-1, at 7-10).

A claimant's subjective complaints can support a claim for disability, but there must also be objective medical evidence in the record of an underlying medical condition. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). Further, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476 (citations omitted). On review, the Court is to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Id.* (citation omitted). Still, an ALJ's decision to discount a claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Ruling (SSR) 96-7p, 1996 WL 374186, *2. In reviewing an ALJ's credibility determination, the Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [claimant's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476. The Court may not "try the case de novo, nor resolve conflicts in evidence . . . ." *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).

"[T]he ALJ was not bound to accept as credible [Plaintiff's] own testimony regarding her symptoms." *Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992).

10

Analysis of alleged disabling symptoms turns on credibility. *See Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 726-27 (6th Cir. 2004). "Because of their subjective characteristics and the absence of any reliable techniques for measurement, symptoms (especially pain) are difficult to prove, disprove, or quantify." SSR 82-58, 1982 WL 31378, *1. In evaluating credibility an ALJ considers certain factors:

> (i) [A claimant's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [a claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [a claimant] take[s] or ha[s] taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, [a claimant] receive[s] or ha[s] received for relief of [claimant's] pain or other symptoms;
>
> (vi) Any measures [a claimant] use or ha[s] used to relieve [a claimant's] pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning [a claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3).

At the hearing, Plaintiff testified that he washed dishes, cleaned laundry, prepared meals, and could carry a bag of groceries. (Tr. 18, citing Tr. 33, 40). These activities, while not dispositive of whether Plaintiff could engage in full-time work, undermine Plaintiff's credibility that he was suffering from disabling pain. *See Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 536 (6th Cir. 2001) ("The ALJ could properly determine that her subjective complaints were not credible in light of her ability to perform other tasks"). Plaintiff's self-reported activities were not limited to household

chores. He testified he took his grandchildren to the park, sometimes lifting as much as 50 pounds (Tr. 39), went fishing (Tr. 34), used public transportation (Tr. 34), and even rode a bicycle in October 2008 (Tr. 31). As the ALJ noted, these activities suggest Plaintiff retained considerable ability to use his hands as well as stand and walk. (Tr. 18).

In addition, the ALJ's credibility assessment was not limited to a discussion about Plaintiff's activities. The ALJ also considered the objective medical evidence and the opinion of the state agency physician who reviewed Plaintiff's file. The ALJ noted that although Plaintiff brought a cane to the consultative examination and walked with a minimal limp, his straight leg raising was negative. (Tr. 18, citing Tr. 259-60). The ALJ also relied, in part, on the state agency physician Dr. Drew's opinion. The ALJ noted that his RFC, and therefore the credibility determination, was consistent with Dr. Drew's findings that Plaintiff could perform light work. (Tr. 18, 281-88, 290). The ALJ also noted Dr. Drew concluded Plaintiff's complaints of functional loss seemed slightly exaggerated when compared with the medical evidence. (Tr. 18-19). Finally, the ALJ noted that Plaintiff was able to take medication for pain relief. (Tr. 18). The ALJ's credibility determination was reasonable and supported by substantial evidence.

## Conclusion and Recommendation

Following review of the arguments presented, the record, and applicable law, this Court finds the Commissioner's decision denying SSI benefits supported by substantial evidence. The undersigned therefore recommends the Commissioner's decision be affirmed.

                                                    s/James R. Knepp II
                                                  United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).